May it please the court. My name is Walter K. Pyle and I represent Mr. Nick Garduno, the appellate in this case. In the circumstances of this particular case, we are asking the court to expand the certificate of appealability to include what we believe is a substantial issue as to whether Mr. Garduno had the intent to kill his wife, the express intent to kill his wife, which is required by California law. And we also believe that there was insufficient evidence that he premeditated, that is, made a deliberate intention. Well, why, though, when you're asking us to expand the COA on this? And, you know, I mean, I know that you're an experienced lawyer and that any time you raise substantial evidence, you're pushing a rock uphill. It's one of the hardest things in terms of to prove. Why isn't this just a typical domestic violence case wherein you have you've got he gives different accounts of what happened, she gives different accounts of what happened, and at some point she gets shot in the back. They hide that there's evidence that the gun's hidden. And so, you know, why should we expand it? I mean, the jury heard, you know, well, I mean, they heard all of that and they didn't believe it. Because the law says there has to be substantial evidence, there has to be proof, in effect, of the defendant's state of mind. There cannot be implied evidence. Well, except for this is – but there's evidence here that he beat – he did an injury to her three weeks before, that there have been fights about her with – he was jealous of her and her prior boyfriends, and she shot in the back. Yes. But there was no evidence as to the circumstances that took place at the exact time the shot was fired. We know there had been – Well, they all tell a lot of different stories, none of which really come up with – they don't seem to explain how she got shot in the back. And there's experts that testify that the gun couldn't have misfired the way that people are saying that it misfired all of that. Well, keep in mind that the fact that the gun – the important thing is that the State has to prove. It's not a question of the defendant saying, let us explain what happened here. They don't have to say anything. They can give conflicting evidence about what happened. It happened this way, it happened on a Thursday, it happened on a Friday. That doesn't help the State's burden of proof, because the State always has the burden of proving, in this case, intention to kill and premeditation. Well, you never have direct evidence of the state of mind unless the person signs a declaration just before it happens or there's an eyewitness. But there is very – you know. Yes. Go ahead. But usually the evidence is he took a gun and he aimed it at it and he pointed – he pulled the trigger. There you can infer an intent. Here we don't know what happened. And as far as the experts witness, the court of appeal, the California court of appeal said the State showed it couldn't have – the particular defect couldn't have caused this accident. But there was plenty of proof in the testimony of the experts that very easily this is a single-action revolver, which means you have to pull back the hammer in order to fire the gun. Well, there were two shots at the mantle, correct? Yes. Are you saying that those were not intentional, that those were accidental? I am not. I'm saying they were probably intentional. All right. So we have two intentional shots at a mantle. There was a third shot over her shoulder. Was that one intentional or accidental? We don't know. There's no evidence as to whether it was intentional or not. And we – there's enough evidence in the record, look, construed in the light most favorable to the government, that this gun would not fire accidentally, correct? Incorrect. The – there was testimony it could have fired. I really want to have you pursue that, because my understanding is to the contrary from the record. Okay. Very good. Both experts – there's an expert for the State and an expert for Mr. Garduna. Both experts agreed with a single-action revolver, if your hammer – you pull back the hammer to fire. It has four clicks. One of the experts pointed out that in one of the brochures, it showed somebody pulling back the trigger with his hand on the trigger. That is very dangerous, because you only have to pull the trigger a sixteenth of an inch. The State's expert said it was something less than a sixteenth of an inch, and the gun can go off. It can – Mr. Peterson, the expert for the State, was able to, by pulling the – by pulling the trigger hard, he was able to get the gun to fire on both the first click and the second click. It should not have done that. He testified earlier that it couldn't go off on those two positions. The first was a safety position. The second was a loading position. But then on the Friday and over the weekend, he tested it, and he – and I believe Mr. Guy was with him – was able to pull the trigger. Third, if you pull the trigger back – if you pull the hammer back, intending to fire, that lines everything up so that the cartridge and the primer, which is in the center of the cartridge, is all lined up, ready to fire. If you decide, I don't want to fire the gun, and you want – the only way you can release that is to pull back on the hammer again and ease it back down. Let me – let me see if I understand this. The wife had wounds on her face that were consistent with having been beaten. Yes. She had been beaten. She – she had been – he had – he had yelled at her and had been violent before. Yes. He fired two shots that were intentional into this ceiling – into the ceiling or the mantel or wherever. Shooting at a target on the mantel. Well – Shooting someone. At scenes. Not – apparently not aimed at her. And then a third shot that hit her. And there was a prosecution expert who said that it could go off accidentally if it got dropped or something like that. If – if it got dropped. Uh-huh. He said also that the – the only safety on this particular gun is a single-action gun, which means the hammer rests – comes down when you – when you put – when the hammer's in the so-called rest position. It's against the cartridge. So that after he had – he had hit her, been violent and abusive, and fired deliberately into the air, it just accidentally went off and hit her. That's – that's – Well, it was only two – yes, yes. It could have happened that way, and there's no evidence that it didn't. And the State has the burden of showing some kind of evidence to show an intent. But in order for you to prevail, we have to believe, as Judge Callahan has noted, a deliberate shot over the – into the air, two shots into the mantel, and then an accidental shot. Is that right? Well, even if it was an intentional shot, the question is, was it shot with the intent to kill his wife? Well, just – was it not enough to shoot with the intent to hit her in the back? Correct. As long as – yes. Under California law, unless he has the express intent to kill, he is – he cannot be guilty of attempted murder. No. He could have been convicted of – he could have been convicted – if he killed her, he could have been convicted of secondary murder. But attempted murder is different. As we explain in our brief, for attempted murder, you must have an express intent to kill. In this particular case, he's – But it means to have that in your mind. It can't be – Well, I mean, I think that there's an argument that can be made anytime that someone shoots someone, they don't intend well of that. I mean, yes, there are people that – there are people that survive gunshot wounds, but it's different than throwing a lamp at someone when you shoot someone. I mean, that's a considerably different – I mean – In California, yes. In California, if an actual homicide takes place, not of attempted, but an actual homicide takes place, the presumption is second-degree murder. You can't have that with attempted murder. No. I'll have to do some research here, but you're telling me that in California, a deliberate – deliberate shooting somebody in the back is not necessarily intent to kill the person? If you – if you point the gun and – and if you point the gun at their back and intending to hit the back, yes, it probably is. You probably could come to the – But if it's accidental, it's not. Right. It could be negligent discharge of a firearm. It could be – So we're back to the previous scenario. All right.  Okay. And also, one final thing. This is a six-shooter, and the prescribed way of handling this is to have one cylinder without a round in the chamber. And one of the – both experts said if you load all six cylinders, quote, there could be an accident. Yeah. Okay. You have about 30 seconds left. Thank you. Thank you. I'll reserve that. May it please the Court. Pam Critchfield, representing Respondent Appellee. And I am here today to discuss the certified issues. Well, he seems to be conceding those or putting them in an Anders category. So if we agree that the district court was correct, that he's not entitled to equitable tolling, we don't have to address the merits of the certified. Is that correct? I agree. Yes, I would agree with that. I did not come prepared to discuss the uncertified issue and believe that I would be allowed time to brief it if the Court was interested. Well, I think we have a new rule that they can – you were put on notice in the brief, right, that he was raising it? Raising it, yes. And asking that it be certified. So I think that you didn't really exactly make a correct assumption in coming to the conclusion. You just don't have to prepare on that. Okay. Well, if I – let's just – if it would be acceptable to my colleagues and to you, if the Court feels that it needs supplemental briefing, it will vacate the submission and order the briefing. But otherwise, we'll order the case submitted. Thank you. I don't think you have to say anything more. Unless the Court has some additional questions. There don't appear to be any. Thank you. The case just argued is submitted for decision.
judges: Lucero, Schroeder, Callahan